## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN (CHICAGO) DIVISION

**UNITED STATES OF AMERICA**

                                                                   **Case No: 07 C 6321**

**vs.**

                                                 **Judge Wayne R. Andersen**

**ANGEL FIGUEROA**

_____/

## FIGUEROA'S REPLY TO GOVERNMENT RESPONSE TO FIGUEROA'S MOTION UNDER 28 U.S.C. § 2255

Angel Figueora, by and through his undersigned counsel, hereby files his reply to the Government's response to his motion filed pursuant to 28 U.S.C. § 2255.

First, we wish to express our thanks to Assistant United States Attorney Renato Mariotti for his professional and courteous cooperation in filing the motions to obtain the unsealing and disclosure to Mr. Figueroa of the first motion for extension of time to file the indictment ("First Motion") and the first order granting an extension of time to file the indictment in this case ("First Order"). A true and correct copy of the First Motion is hereunto annexed as Exhibit A, and by this reference made a part hereof. A true and correct copy of the First Order is hereunto annexed as Exhibit B, and by this reference made a part hereof.

We also thank the Court for its willingness to grant the requested disclosure.

The disclosure of the First Motion and First Order have helped to focus the argument on what Figueroa believes is the real issue in this case, as we will explain below.

## I.    FIGUEROA'S JUDGMENT AND SENTENCE MUST BE VACATED BECAUSE HIS SPEEDY TRIAL RIGHT TO A TIMELY INDICTMENT WAS VIOLATED.

Figueroa's original memorandum of law was premised on the record as it then appeared to Figueroa, that is, that there was no record evidence that he had seen that there had ever been a timely First Motion or First Order to extend the time to indict. Therefore his argument was simply that it was ineffective assistance of counsel for his trial counsel to not have timely move to dismiss on that ground.

However, Figueroa's habeas counsel anticipated the possibility that there in fact had been a timely motion and order to extend the time to indict, which was under seal, and argued in his original motion and memorandum if that turned out to be the case that Figueroa would then request permission to reframe his argument as necessary to respond to the facts as might be disclosed if and when any such First Motion and First Order extending the speedy indictment time were disclosed to him.

Figueroa suggested in his original memorandum of law based on his inference from the fact that the *Second Order* granting an extension of the speedy indictment time described itself as an *agreed order,* that it might prove to be the case that

Figueroa's counsel, unbeknownst to him, had agreed to a first extension of time as well, or possibly through mis-communication that the Government thought counsel for Figueroa was in agreement with such an extension.  Figueroa swore under oath that he personally had never consent or agreed to any extension of the speedy indictment time period, nor had his counsel ever discussed with him doing so on his behalf.

Now that Figueroa has the benefit of the First Motion and First Order extending the speedy indictment time period, we see that our speculation has proved correct.  The First Order, like the second order, styles the proceeding as an "agreed motion," and on that basis this Court granted the Government the necessary extension of time to file an indictment, were it possible to do so.

The First Order that now appears of record is legally insufficient under the standard set forth in *Zedner v. United States*, 547 U.S. 489, 126 S.Ct. 1976 (2006). Indeed, under *Zedner*, Figueroa is entitled to relief, because *Zedner* held that defendants could not waive the speedy trial statute's protections, because the speedy trial right is a right to the public to a speedy trial:

> The purposes of the Act also cut against exclusion on the grounds of mere consent or waiver. If the Act were designed solely to protect a defendant's right to a speedy trial, it would make sense to allow a defendant to waive the application of the Act. But the Act was designed with the public interest firmly in mind. See, *e.g.,* 18 U.S.C. §

3161(h)(8)(A) (to exclude delay resulting from a continuance-even one "granted ... at the request of the defendant"-the district court must find "that the ends of justice served ... outweigh the *best interest of the public* and the defendant *in a speedy trial*" (emphasis added)). That public interest cannot be served, the Act recognizes, if defendants may opt out of the Act entirely.

*Zedner v. United States*,  547 U.S. 489, 500-501 (2006).

*Zedner* further holds that the court is required to make specific findings supporting a determination that the ends of justice require an extension of the act's time limits, and that such findings cannot be made after the fact:

The Act requires that when a district court grants an ends-of-justice continuance, it must "se[t] forth, in the record of the case, either orally or in writing, its reasons" for finding that the ends of justice are served and they outweigh other interests. 18 U.S.C. § 3161(h)(8)(A). Although the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance (the continuance can only be "granted ... on the basis of [the court's] findings"), the Act is ambiguous on precisely when those findings must be "se[t] forth, in the record of the case." However this ambiguity is resolved, at the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2).

*Zedner v. United States*,  547 U.S. 489, 506-507 (2006).

*Zedner* further held that the failure to comply with the Act's requirements are not subject to harmless error review but instead the Act mandates dismissal:

The Government suggests that this error, stemming as it does from the District Court's technical failure to make an express finding, may be regarded as harmless. Brief for United States 31, n. 8. Harmless-error

review under Federal Rule of Criminal Procedure 52(a) presumptively applies to "all errors where a proper objection is made," *Neder v. United States*, 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), and we have required "strong support" to find an implied repeal of Rule 52, *United States v. Vonn*, 535 U.S. 55, 65, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). We conclude, however, that the provisions of the Act provide such support here.

. . .

A straightforward reading of these provisions leads to the conclusion that if a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted, and if as a result the trial does not begin on time, the indictment or information must be dismissed. The argument that the District Court's failure to make the prescribed findings may be excused as harmless error is hard to square with the Act's categorical terms.

*Zedner v. United States*, 547 U.S. 489, 507-508 (2006).

Under *Zedner* the First Order is legally insufficient, because it was based on the defendant's purported waiver of the speedy indictment time requirements and summarily recited that the ends of justice required the extension, without making the findings required under *Zedner* to support the ends of justice exception. Under *Zedner* those findings cannot be supplied after the fact were there any basis upon which to attempt to do so. Finally, under *Zedner* this Court is required to dismiss the indictment because the error is not subject to harmless error analysis.

The Government's response to Figueroa's 2255 speedy indictment argument was very simple:

Defendant's claim that his speedy trial rights were violated was actually

raised on direct appeal and was decided by the Seventh Circuit.

[Govt. Response, p. 2]

[A]lthough *res judicata* does not apply in § 2255 proceedings, "in the

absence of changed circumstances of fact or law, we will not reconsider

an issue which was already decided on direct appeal."

[Govt. Response, p. 3, citing *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir.

1995)]

The Seventh Circuit fully reviewed the issue and eventually found that

there was no constitutional or Speedy Trial Act violation that occurred.

[Govt. Response, p. 3]

Of course, the Government is mistaken.  Figueroa is raising an ineffective

assistance of counsel claim in this 2255 proceeding, a claim not presented on direct

appeal:

Figueroa asserts that none of his counsel ever discussed the right to
speedy indictment with him before trial and there was no intentional
relinquishment or waiver of this right on his part.[1]  Instead, the failure

---

[1] Indeed during the first thirty day time period that would have been covered
by the "First" motion to extend, Figueroa was detained out of state and had virtually
no contact with his counsel.  His counsel did not visit him in the out of state detention

of his counsel to advise him of his right to speedy trial and to allow him
to exercise his right to challenge the indictment on speedy trial grounds
constitutes classic *Strickland* ineffective assistance of counsel.  Both
*Strickland* prongs are met, deficient performance and prejudice.

[Figueroa's Memorandum of Law in Support of § 2255 Petition, pp. 13-14]

The Seventh Circuit in fact never addressed the *merits* of Figueroa's speedy

indictment claim, instead it denied relief solely on the basis of his counsel's failure

to timely file a speedy indictment motion to dismiss:

Figueroa argues that because he was not indicted within 30 days from
his arrest, and was not tried within 70 days from his indictment
(excluding time exempted by statute), his indictment must be dismissed
under the Speedy Trial Act. See 18 U.S.C. §§ 3161(b), (c)(1), 3162(a).
Figueroa, however, waived his rights under the Speedy Trial Act
because he did not move to dismiss his indictment before trial.

*United States v. Figueroa*, Slip Copy, 2007 WL 1175637, *1 (7th Cir. 2007).

Figueroa is correct in raising his ineffective assistance of counsel claim at this

stage of the proceeding and not earlier:

We hold that an ineffective-assistance-of-counsel claim may be brought
in a collateral proceeding under § 2255 , whether or not the petitioner
could have raised the claim on direct appeal.

In light of the way our system has developed, in most cases a motion
brought under § 2255 is preferable to direct appeal for deciding claims
of ineffective assistance. When an ineffective-assistance claim is

---

facility until *after* the expiration of the initial 30 day speedy indictment time limit,
and in that visit and afterward never discussed with Figueroa his right to speedy
indictment.

brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.

*Massaro v. United States*,  538 U.S. 500, 504-505, 123 S.Ct. 1690, 1694 (2003).

Regarding the *Strickland* strategic choice consideration, Figueroa argues that the *initial decision* to waive speedy indictment was not a choice committed to his counsel to make on his behalf, no matter how well intentioned counsel was in choosing to agree to the waiver.  Her secret and unilateral waiver was not authorized nor consented to by Figueroa and was not her choice to make.  Of course, under *Zedner*, a waiver of speedy indictment is not a choice for the defendant himself to make, much less his counsel acting without consulting with her client.  In other words, we argue that by definition the initial decision to waive speedy indictment as a matter of law is not a strategic choice for counsel to make.[2]

But this Court perhaps does not have to address that question, because whether the initial decision to waive speedy trial was a reasonable strategic choice or not, assuming counsel can make that choice for the defendant, which we dispute, a new

---

[2] In any event Figueroa was not estopped from asserting his speedy indictment rights because of his prior attorney's unilateral and secret agreement to waive his speedy indictment right.

strategic choice window opened once Figueroa chose to go to trial instead of cooperate and plead guilty. At that point a new decision had to be made, whether to move to dismiss on speedy indictment grounds or not. In fact, we argue that no strategic choice was made at that point; counsel simply failed to move to dismiss the indictment on speedy indictment grounds. Figueroa could at any time prior to trial have moved to dismiss on speedy indictment grounds, and had that been done, Figueroa would have been entitled to dismissal.

By the time Figueroa went to trial he had changed attorneys. The trial attorney could not have known about the prior counsel's waiver and court's extension of the speedy indictment right because of the indisputable fact that the First Motion and First Order *were under seal.* The trial attorney filed no motion to require their disclosure. Without being able to review the First Motion and First Order counsel had no way of knowing if there was any basis to challenge the speedy indictment delay or not. We submit that it was an issue that was simply overlooked or ignored. This was not a strategic choice, reasonable or otherwise.[3]

In any event, the real question is whether Figueroa, as a prisoner collaterally attacking his conviction under § 2255, is entitled to the benefit of the *Zedner* Court's

---

[3] Again we note that Figueroa has sworn under oath in his 2255 petition that no counsel at any time discussed speedy indictment with him until after his trial at which point he promptly asserted his rights.

interpretation of the speedy trial statute, which came after Figueroa's convictions had become final on direct appeal. The answer to this question is "yes," Figueroa is so entitled.

Courts have long allowed defendants collaterally attacking their conviction the benefit of decisions which give the federal criminal statute under which they were convicted a more narrow reading than had previously been applied at the time of their conviction. See *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 2522 (2004) ("New substantive rules generally apply retroactively [on collateral review]. This includes decisions that narrow the scope of a criminal statute by interpreting its terms.") (citation omitted) (emphasis in original); Bousley v. United States, 523 U.S 614, 619-20, 118 S.Ct. 1604, 1609 (new interpretations of criminal statutes made after a defendant's conviction under that statute are retroactive on collateral review); *Lanier v. United States*, 220 F.3d 833, 838 (7th Cir. 2000) (noting defendant was entitled, even on collateral review, to the benefit of Court's interpretation of a term in 21 U.S.C. § 848 made after defendant's conviction under § 848 had become final); *United States v. Ryan*, 227 F.3d 1058, 1062-63 (8th Cir. 2000) (determining that when the Supreme Court narrows the interpretation of a criminal statute enacted by Congress, that interpretation may be applied retroactively to § 2255 claims for post-conviction relief); *United States v. Barnhardt*, 93 F.3d 706, 708 (10th Cir. 1996)

(Supreme Court decision defining substantive reach of criminal statute can be applied retroactively to cases on collateral review). The rationale behind such a policy begins with the idea that "a statute, under our system of separate powers of government, can have only one meaning." *Brough v. United States*, 454 F.2d 370, 372-73 (7th Cir. 1971) (emphasis added); accord *Bousley*, 523 U.S. at 620-21 ("[U]nder our federal system it is only Congress, and not the courts, which can make conduct criminal.") (citation omitted). In other words, when a court interprets the scope of an existing criminal statute, that interpretation effectively serves as a declaration of what the statute has always meant. *Gates v. United States*, 515 F.2d 73, 78 (7th Cir. 1975). Certainly, if it were any other way, if a statute had a new meaning every time a court saw fit to interpret it, the result would ultimately be that acts covered by the statute might be criminal one day but not the next, and persons committing those acts may or may not be subject to prosecution and imprisonment depending on whether they committed the act pre-interpretation, post-interpretation, or somewhere in-between.

Considering that a statute can have only one meaning from the date of its effectiveness onward (unless of course, the language of the statute has actually been changed by Congress), then where a court narrows the scope of a statute under which a federal prisoner was previously prosecuted, there exists the possibility that the prisoner now stands convicted of an act that the law never made criminal or in this

case of an offense under an indictment which should have been dismissed. *Bousley*, 523 U.S. at 620.

It would be wholly contrary to our notions of justice and fairness to allow a defendant to serve a prison term under an indictment that was subject to dismissal for failure to comply with Congress's restrictions on speedy indictment. Defendants collaterally attacking their conviction are entitled to the benefit of decisions which give a federal criminal statute a more narrow reading than had previously been applied to their own conviction under that statute. *Schriro*, 124 S. Ct. at 2522-23; *Bousley*, 523 U.S. at 619-20; *Lanier*, 220 F.3d at 838; *Ryan*, 227 F.3d at 1062-63; *Barnhardt*, 93 F.3d at 708.[4]

---

[4] As is obvious, many of the cases cited here discuss the application of a postconviction statutory interpretation to habeas proceedings in terms of "retroactivity." In using the term "retroactive" or "retroactivity," such cases seem to imply that a court's interpretation of a statute somehow changes the law. Yet, this is simply not the case as a statute does not mean one thing pre-interpretation and then something entirely different post-interpretation. *Gates v. United States*, 515 F.2d 73, 78 (7th Cir. 1975). Ultimately, it seems that many courts discuss statutory cases (like the instant action) in terms of "retroactivity" because it is simply the easiest way to describe the situation at hand. However, even those courts that approach statutory cases in such a manner note that the implications for retroactivity analysis are quite different from those cases in which a new rule of criminal procedure is announced. See, e.g., *Woodruff v. United States*, 131 F.3d 1238, 1242 (7th Cir. 1997) ("When the Supreme Court is announcing what an existing statute has meant all along, the implications for retroactivity analysis are quite different from the case in which it is announcing for the first time another implication of the provisions of the Constitution that bear on criminal procedure.").

The fact that the Supreme Court only recently interpreted the speedy trial statute to prohibit waivers by the defendant[5] and only recently interpreted the speedy trial statute to require express statutorily mandated findings and not simply a rote recitation that the ends of justice require extension, does not mean that the speedy indictment statute means something different today than it did before the Court's interpretation. *Gates*, 515 F.2d at 78 ("A statute does not mean one thing prior to . . . interpretation and something entirely different afterwards."). Rather, the *Zedner* Court's interpretation was the law of this Circuit, properly interpreted, at the time of Figueroa's district court proceedings and the law of this Circuit at the time of his appeal. Because the Supreme Court's decision effectively narrows the interpretation previously applied in Figueroa' case, Figueroa stands convicted under an indictment that in fact should have been dismissed had his trial counsel simply filed a pretrial motion to dismiss.   Therefore, Figueroa is entitled to the benefit of the *Zedner*

---

[5] "The purposes of the Act also cut against exclusion on the grounds of mere consent or waiver. If the Act were designed solely to protect a defendant's right to a speedy trial, it would make sense to allow a defendant to waive the application of the Act. But the Act was designed with the public interest firmly in mind. See, *e.g.,* 18 U.S.C. § 3161(h)(8)(A) (to exclude delay resulting from a continuance-even one "granted ... at the request of the defendant"-the district court must find "that the ends of justice served ... outweigh the *best interest of the public* and the defendant *in a speedy trial*" (emphasis added)). That public interest cannot be served, the Act recognizes, if defendants may opt out of the Act entirely." *Zedner v. United States*, 547 U.S. 489, 500-501 (2006).

Court's interpretation of the speedy trial statute in this collateral proceeding and under *Zedner* is entitled to dismissal of the indicment. See *Bousley*, 523 U.S. at 619-20; *Lanier*, 220 F.3d at 838; *Ryan*, 227 F.3d at 1062-63; *Barnhardt*, 93 F.3d at 708.

## II.     FIGUEROA IS ENTITLED TO A *DE NOVO* RESENTENCING AND HEARING ON HIS MOTION TO DISMISS FOR SPEEDY INDICTMENT PURPOSES BECAUSE THE DISTRICT COURT FAILED TO RENEW ITS INQUIRY WHETHER FIGUEROA DESIRED COUNSEL AT HIS SENTENCING PROCEEDING.

Figueroa rests on his initial memorandum of law with respect to the second point.

Counsel has used his best efforts to obtain a transcript of the change of plea colloquy on the underlying Illinois state drug offense that was used to enhance Figueroa's sentence to the 20 year minimum mandatory sentence the court applied. To date counsel has only been able to obtain a transcript of the later sentencing, not the change of plea.  It remains to be seen based upon the missing transcript, whether an argument can be made that the underlying offense was not a qualifying predicate.

## III.     FIGUEROA IS ENTITLED TO A *DE NOVO* APPEAL BECAUSE FIGUEROA WAS DENIED HIS RIGHT TO COUNSEL ON APPEAL.

Figueroa rests on his initial memorandum of law with respect to the second

point, with the addition of the following comments.    The Seventh Circuit denied

relief on appeal on the statutory speedy indictment claim based solely on Figuero's

*failure to file his motion to dismiss prior to trial*.  In so holding, we respectfully urge

that the Seventh Circuit misapplied the waiver provision of § 3162(a)(2), which by

its clear terms limits its waiver provision to failure to file speedy *trial* claims, not

failure to file speedy *indictment* claims pre-trial.

§ 3162. Sanctions

(a)(1) If, in the case of any individual against whom a complaint is filed
charging such individual with an offense, no indictment or information
is filed within the time limit required by section 3161(b) as extended by
section 3161(h) of this chapter, such charge against that individual
contained in such complaint shall be dismissed or otherwise dropped. In
determining whether to dismiss the case with or without prejudice, the
court shall consider, among others, each of the following factors: the
seriousness of the offense; the facts and circumstances of the case which
led to the dismissal; and the impact of a reprosecution on the
administration of this chapter and on the administration of justice.

(2) If a defendant is not brought to trial within the time limit required by
section 3161(c) as extended by section 3161(h), the information or
indictment shall be dismissed on motion of the defendant. The defendant
shall have the burden of proof of supporting such motion but the
Government shall have the burden of going forward with the evidence
in connection with any exclusion of time under subparagraph 3161(h)
(3). In determining whether to dismiss the case with or without
prejudice, the court shall consider, among others, each of the following
factors: the seriousness of the offense; the facts and circumstances of the
case which led to the dismissal; and the impact of a reprosecution on the
administration of this chapter and on the administration of justice.
Failure of the defendant to move for dismissal prior to trial or entry of

a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal *under this section.*

18 U.S.C.A. § 3162.

The failure to indict in a timely manner requires mandatory dismissal, and such a dismissal does not require a motion from the defendant at all, rather can airse from a *sua sponte* order from the district court itself, in fulfillment of its obligations under the Act, in contrast to a speedy *trial* motion to dismiss, which *requires* the election of the defendant.  Had Figueroa had counsel on appeal this argument would have been urged upon the Circuit Court.

In addition to this statutory interpretation question, which the Seventh Circuit appears to have overlooked and which Figueroa, representing himself *pro se* failed to raise, the case upon which the Seventh Circuit relied in denying Figueroa relief on the basis of waiver, *United States v. Morgan*, 384 F.3d 489 (7th Cir. 2004), noted that the waiver provision of § 3162(a)(2) was itself subject to waiver if the Government failed to raise the objection at the district court:

A waiver argument, after all, can be waived by the party it would help, and in these instances, it appears that the prosecutors forfeited the benefit of § 3162(a)(2).

*United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004).

The Government's objection at the district court in Figueroa's case was not based on Figueroa's failure to file his motion to dismiss pre-trial; instead the Government argued that Figueroa's *prior counsel* had consented to the waiver of speedy indictment at the time the extension was sought.

We now know that argument was wrong as a matter of law, *see Zedner*. Had Figueroa had counsel on appeal, counsel would have argued that the Government had waived the waiver argument, and used *Morgan* to *support* relief, rather than the other way around. In reliance upon *Morgan*'s waiver of the waiver objection, the Seventh Circuit would then have reached the merits of the issue. Had it done so, because *Zedner* had already been decided before Figueroa's appeal, Figueroa would have been entitled to relief, because the consent quasi-estoppel argument relied upon by the Government at the district court was no longer good law under *Zedner* by the time of Figueroa's appeal.[6]

For these reasons Figueroa was prejudiced by the denial of counsel on appeal. Figueroa was not competent to effectively argue his speedy indictment issue on appeal and was prejudiced by the denial of appellate counsel.

Respectfully submitted,

---

[6] The Circuit Court never reached the merits of the Government's "consent" argument.

THE LAW OFFICE OF
WILLIAM MALLORY KENT

s/ William Mallory Kent
William Mallory Kent
Florida Bar No. 0260738
1932 Perry Place
Jacksonville, Florida 32207
(904) 398-8000 Phone
(904) 348-3124 Fax
kent@williamkent.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 20, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Renato Mariotti

Renato.Mariotti@usdoj.gov

as well as all counsel of record.

_____s/ William Mallory Kent____
William Mallory Kent
